UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UMAR ALLI,                                                   :
                                                             :
              Plaintiff,                     :   No.: 11 Civ. 4047 (AJP)
                                                             :
              -against-                      :
                                                             :
CITY OF NEW YORK, et al.,                                    :
                                                             :
              Defendants.                    :
------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR BAD ACTS, PRIOR CRIMINAL HISTORY, AND OTHER IRRELEVANT AND UNDULY PREJUDICIAL INFORMATION**

Michael V. Rella
VINSON & ELKINS L.L.P.
666 Fifth Avenue, 26th Floor
New York, New York 10103
Tel: (212) 237-0000
Fax: (212) 237-0100
*mrella@velaw.com*

*Pro Bono Counsel for Plaintiff Umar Alli*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................4

ARGUMENT ....................................................................................................................................6

I.    Mr. Alli's Disciplinary Record, Prior Criminal History, and Prior Bad Acts are Not Admissible in Defendants' Case in Chief as Evidence of Penological Security Concerns ................................................................................................................6

    A.    Under Rule 402, The Evidence is Irrelevant ............................................6

    B.    Even if Relevant, the Evidence is Overly Prejudicial ............................9

    C.    The Other Bad Acts Evidence is For an Improper Purpose ...................10

II.    Evidence of Prior Convictions Should be Excluded for Impeachment Purposes ..............11

CONCLUSION ..............................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

Ford v. McGinnis,
   352 F.3d 582 (2d Cir. 2003) .................................................................................................. 1

Jova v. Smith,
   582 F.3d 410 (2d Cir. 2009) ............................................................................................. 7, 13

O'Lone v. Shabazz,
   482 U.S. 342 (1987) .............................................................................................................. 9

Pugh v. Goord,
   571 F. Supp. 2d 477 (2d Cir. 2008) ...................................................................................... 8

Salahuddin v. Goord,
   467 F.3d 263 (2d Cir. 2006) .................................................................................................. 9

Shakur v. Selsky,
   391 F.3d 106 (2d Cir. 2004) ................................................................................................ 11

United States v. Carlton,
   524 F.3d 97 (2d Cir. 2008) .................................................................................................. 11

United States v. Curley,
   639 F.3d 50 (2d Cir. 2011) .................................................................................................. 10

United States v. Hsu,
   669 F.3d 112 (2d Cir. 2012) .................................................................................................. 9

**Rules**

Fed. R. Evid. 401 ........................................................................................................................ 7

Fed. R. Evid. 402 ........................................................................................................................ 6

Fed. R. Evid. 403 ........................................................................................................................ 9

Fed. R. Evid. 404(b) .................................................................................................................. 11

Fed. R. Evid. 608(b) .................................................................................................................. 13

Fed. R. Evid. 609 ...................................................................................................................... 12

Fed. R. Evid. 609(a)(1) ............................................................................................................. 12

Fed. R. Evid. 609(a)(2) ............................................................................................................. 12

**Other Authorities**

Chapter 1 of Title 40 of the Rules of the City of New York, § 1-07 ............................................ 3

Chapter 1 of Title 40 of the Rules of the City of New York, § 1-07(j)(2) .................................. 10

New York City Department of Correction Directive 3252(VII)(A) ......................................... 5, 6

## PRELIMINARY STATEMENT

Mr. Alli sued the City of New York and the individual defendants for alleged violations of his religious rights while he was a pre-trial detainee at Rikers Island. Specifically, Mr. Alli alleges that he was denied access to Jummah[1] services from December 2010 through July 2011.[2] Mr. Alli further alleges that he was denied Halal meals while detained at Rikers Island. We respectfully ask the Court to prevent Defendants from eliciting evidence of prior bad acts and Mr. Alli's prior criminal history at trial because the evidence is not relevant to his claims concerning the denial of his constitutional right to exercise his religion, and the probative value of such evidence is substantially outweighed by its highly prejudicial nature.

We anticipate that Defendants will attempt to use evidence of prior bad acts and criminal convictions in their case in chief as evidence that Jummah services were denied for security reasons. In essence, Defendants will likely argue that the denial of Jummah services was rationally related to the legitimate penological interest of institutional security.[3] Additionally, it is believed that Defendants will attack Mr. Alli's character for truthfulness when he testifies at trial. This evidence should be excluded because it is not

---

[1] Jummah is a congregate Muslim service that is mandated by the religious tenets of the Koran. The service is held weekly on Fridays but no such services were held at MHAUII (defined below) from December 2010 up until July 2011.

[2] Although Mr. Alli's Amended Complaint states that he was denied Jummah services up until July 2011, the record at trial will show that Jummah services were in fact denied until at least January 2012.

[3] Free exercise rights may be restricted if the restriction is reasonably related to a legitimate penological interest. See Ford v. McGinnis, 352 F.3d 582, 594 (2d Cir. 2003). This standard is deferential to the prison administration but considers: 1) whether there is a valid rational connection between the restriction and the legitimate government interest justifying it; 2) whether the prisoner has alternative means of exercising his right; 3) whether accommodating the right will have consequences for the prison staff, other prisoners, or the allocation of prison resources; and 4) whether alternatives exist that would accommodate the right without compromising valid penological interests. See id. at 595.

relevant and is highly prejudicial with respect to Mr. Alli's claims for both Jummah services and Halal meals.

The New York City Department of Correction Directives make clear that all inmates, including inmates in the segregation unit where Mr. Alli was housed, are entitled to congregate religious services, including Jummah. The *only* exception is where an inmate has been found to pose a threat to security because of a likelihood that he will actively disrupt *a particular religious service*, and *only* after the inmate has been found to pose such a threat in a procedure with "*adequate due process safeguards*." These safeguards include notice to the inmate, an opportunity to be heard, a written decision setting forth the basis for the decision and an opportunity for the inmate to seek reconsideration. In short, an individual assessment must be made *at the time* when an inmate is denied Jummah services as to whether the inmate should be permitted to attend, or whether he should be precluded because he will disrupt the particular service.

Here, there is no dispute that Mr. Alli was not permitted to attend Jummah services during the time in question and that he was not afforded *any* of the Department of Correction due process safeguards in connection with that denial. Indeed, Defendants have not produced *any* documents showing that an individual assessment was made with respect to Mr. Alli, including any documents related to: the conclusions of any security assessment; the reasons why he was precluded from attending Jummah services; any notices provided to Mr. Alli informing him that he would be denied his constitutional right; or any notice of an opportunity for Mr. Alli to voice his disagreement to, or otherwise challenge, the Defendants' findings.

Based on Defendants' failure to produce *any* evidence showing that Mr. Alli was denied Jummah services because he was a security threat (despite their obligation to do so, if such documents exist), Defendants should be precluded from now admitting irrelevant and prejudicial evidence that had no bearing upon the denial of congregate services during the relevant time in question.  Defendants should be prevented from placing the cart before the horse and should not be able to put evidence before the jury that presupposes that Mr. Alli's criminal history, disciplinary record, or prior bad acts demonstrate an overarching security risk when Defendants cannot show any evidence that institutional security concerns were actually considered as part of an individualized assessment of Mr. Alli's security risk, specifically with respect to attendance at Jummah services.[4]  Moreover, Defendants cannot now argue that they denied Mr. Alli Jummah services based on his prior bad acts when there is no evidence that Jummah services were ever made available in the first place (or would be made available in the future).[5]

Further, with regard to Mr. Alli's character for truthfulness, the probative value of evidence of his criminal history, prior bad acts, or prison disciplinary record is substantially outweighed by the unfair prejudice that would result from putting before the jury evidence that the Defendants did not weigh or consider in denying Mr. Alli Jummah services.  Given the factual context of the incidents in question, the evidence has no

---

[4] The Rules of the City of New York provide that "[p]risoners are entitled to exercise their religious beliefs in any manner that does not constitute a clear and present danger to the safety and security of the facility."  Section 1-07 of Chapter 1 of Title 40 of the Rules of the City of New York.  Mr. Alli's arguments with respect to the admissibility of evidence of any prior bad acts or his prior criminal history apply with equal force to his claims for Halal meals.  The failure to conduct an assessment of Mr. Alli's alleged threat to security at the time of the denial precludes Defendants from eliciting post-hoc testimony rationalizing the denial based on security concerns that were never actually reviewed.

[5] Evidence at trial will show that other inmates' requests for Jummah services were dealt with in similar summarily fashion with no consideration given to the religious rights in question or the individual merits of the request.

3

bearing on Mr. Alli's character for truthfulness and should be excluded. To the extent that evidence of the prior convictions is deemed admissible, the Court should exercise its discretion to prevent inquiry into the specific instances of the arrests and convictions, which are entirely irrelevant to both the security issues in this case and Mr. Alli's character for truthfulness and are likely to mislead and confuse the jury.

In addition, evidence of Mr. Alli's alleged prior bad acts or convictions should not be used to impeach Mr. Alli's character for truthfulness because of its highly prejudicial nature and the likelihood that presenting such evidence would confuse issues and mislead the jurors. Namely, the question at trial is why the Defendants denied Jummah services to Mr. Alli, a practicing Muslim prisoner with a First Amendment right to practice his religion while detained. Defendants should be prevented from shifting the spotlight to irrelevant matters such as why Mr. Alli was an inmate or how a hypothetical inmate with Mr. Alli's record should have been treated.

## BACKGROUND

Mr. Alli was[6] an inmate in the Mental Health Assessment Unit for Infracted Inmates ("MHAUII") at the George R. Vierno Center ("GRVC") at Rikers Island during December 2010 through July 2011, the time period in question in his Amended Complaint. MHAUII is a mental health segregation unit and houses male inmates. Mr. Alli was housed in MHAUII as a pre-trial detainee while he awaited trial and sentencing on two weapons possession charges.[7] On October 28, 2011, Mr. Alli filed an Amended Complaint in which he stated that as an inmate in MHAUII at GRVC, he was "denied

---

[6] Mr. Alli was transferred to the Downstate Correctional Facility in March 2012.

[7] Upon information and belief, Mr. Alli was also awaiting sentencing on another charge, which is not included as part of this motion.

4

attending weekly Jummah services" and Halal meals.  Am. Compl. at ¶¶ 1, 8, Docket No. 29.

The Amended Complaint alleges that Mr. Alli was denied access to Jummah services and Halal meals beginning in December 2010 despite Mr. Alli submitting "numerous grievances and complaints to D.O.C., B.O.C. grievance coordinator and Kathleen Muvley." Id. at ¶ 13.  The letters and grievances date back to December 2010, yet Mr. Alli received no response to any of his numerous requests for congregate services.  Ultimately, Mr. Alli was denied access to Jummah services for a period of many months while he was an inmate in MHAUII.  Indeed, Defendants concede that Mr. Alli was not permitted to attend Jummah services during the relevant time period.  See Hr'g Tr. 6:1-7, March 9, 2012 ("I don't think that there's going to be a dispute about whether he, in fact, is correct . . . .  It's clear that he did not [attend Jummah services] during that time period.")

New York City Department of Correction Directive 3252 makes clear that "[a]ll inmates shall be permitted to congregate for the purpose of religious worship . . . ."  This right extends to inmates housed in punitive segregation units such as MHAUII.  Directive 3252(VII)(A) ("Inmates housed in administrative and punitive segregation and any other special status category shall be permitted to attend congregate religious services with inmates in general population . . . .").  There is one limited exception, however, which is where an "inmate has been found, *in a procedure with adequate due process safeguards,* to pose a threat to the  safety and security of the institution, *because of the likelihood that he/she will actively disrupt a particular religious service or services attended by general population."*  Id. (emphasis added.)  The Directive then provides very specific and

5

detailed "due process safeguards" that must be followed when an inmate is denied congregate religious services, which includes notice to the inmate, an opportunity to be heard, a written decision setting forth the basis for the decision and an opportunity for the inmate to seek reconsideration.  Id.

It undisputed that Mr. Alli was not afforded any due process safeguards despite the Defendants' failure to allow him to attend Jummah services.  Specifically, in response to Mr. Alli's request for documents or notices concerning Defendants' denial of Mr. Alli's religious rights, the Defendants responded "[n]o responsive documents exist."  Def.s' Resp. to Second Request for Documents, Request No. 6, March 5, 2012.  Further, in response to one of Plaintiff's interrogatory requests that Defendants "identify any and all written decisions supporting the basis for any continuing denial of religious services," Defendants responded that "no such written decisions exist."  Def.s' Resp. to Second Set of Interrogatories, Interrogatory No. 4, March 5, 2012.  Discovery has now concluded, and the Defendants have conceded that "[t]he universe of documents that have been produced or identified I think is it.  We can't think of much more."  Hr'g Tr. 6:17-18, March 9, 2012.

## ARGUMENT

I.  **Mr. Alli's Disciplinary Record, Prior Criminal History, and Prior Bad Acts are Not Admissible in Defendants' Case in Chief as Evidence of Penological Security Concerns**

A.  **Under Rule 402, The Evidence is Irrelevant**

Evidence that is not relevant is not admissible.  See Fed. R. Evid. 402.  At trial, Defendants must demonstrate that Mr. Alli's religious rights were infringed because of legitimate penological interests.  While in MHAUII, Mr. Alli was denied access to Jummah services for a period of many months with no explanation and no due process

6

safeguards.  This is despite the fact that he filed many grievances on the subject and Jummah services were held at other punitive segregation facilities on Rikers Island.  Mr. Alli's numerous requests to attend Jummah services were ignored in violation of federal, state, and municipal law.  Defendants failed to make any individualized assessment of Mr. Alli's religious rights at the time when they denied him of those rights, as balanced against the institutional needs of GRVC.  Accordingly, Defendants cannot now claim – several months after Mr. Alli was transferred from MHAUII and *after* he filed his Complaint – that they denied Mr. Alli Jummah services during the relevant time period because of security concerns.

Relevant evidence is evidence that has a "tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Evidence of Mr. Alli's criminal history and prior bad acts, including his disciplinary record at MHAUII,[8] will not make a security-based rationale for the denial of Jummah services during the relevant time period more probable.  Indeed, Mr. Alli's security status was never considered in the on-going denial of Jummah services.  Conclusory appeals to security concerns based on exaggerated fears or speculative post hoc rationalizations are not sufficient to demonstrate legitimate institutional interests.  See Jova v. Smith, 582 F.3d 410, 415 (2d Cir. 2009) (analyzing "compelling interests" in a RLUIPA context).  The Defendants "may not merely reference an interest in security or institutional order in order to justify its actions; rather, 'the particular . . . [action] must further this interest.'"  Id.  "Prison Officials cannot simply use the words 'security' and

---

[8]  In addition, because Defendants did not produce during discovery *any* documents concerning Mr. Alli's disciplinary record, prior criminal history or prior bad acts, they are precluded from using any such documents during their case in chief.

'safety,' and expect that their conduct will be permissible." Pugh v. Goord, 571 F. Supp. 2d 477, 505 (2d Cir. 2008).

Mr. Alli's requests for Jummah services were denied without any review of how his exercise of his religious rights would impact institutional security concerns. Other punitive segregation facilities on Rikers Island offered Jummah services and Defendants have not disclosed any evidence that demonstrates either a legitimate penological interest or a compelling state interest accomplished by the least restrictive means that demonstrates how MHAUII was different from those other units. Defendants should be prevented from presenting evidence of Mr. Alli's disciplinary record, prior criminal history, and prior bad acts in its case in chief because there is no evidence that Defendants considered this information in denying him Jummah services at MHAUII during the relevant time period.

In addition, Mr. Alli's individual record is entirely irrelevant with respect to any alleged overarching institutional safety concerns that would have justified prohibiting Jummah services at the MHAUII facility level. Mr. Alli's numerous requests for Jummah services were ignored and any post hoc attempt to now portray him as a security threat – when such purported threat was not considered at the time that Defendants denied Mr. Alli his right to attend Jummah services – would be a blatant pretextual rationalization for actions that were taken independent of any such security assessment. Further, any attempt to use Mr. Alli's individual records to demonstrate institutional security concerns at a facility with hundreds of inmates would be both irrelevant and highly prejudicial.

### B. Even if Relevant, the Evidence is Overly Prejudicial

Relevance alone is not sufficient to guarantee the admissibility of evidence. United States v. Hsu, 669 F.3d 112, 119 (2d Cir. 2012). Even relevant evidence is excluded when its probative value is outweighed by the danger of unfair prejudice. See id. Evidence of Mr. Alli's criminal history and disciplinary record is not only irrelevant but the admission of such evidence, even if deemed relevant, would be substantially outweighed by the danger of unfair prejudice or misleading the jury. See Fed. R. Evid. 403.

Evidence of Mr. Alli's past crimes and his disciplinary record should be excluded as prejudicial because "prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). Mr. Alli was a Muslim inmate with a baseline right to attend congregate Muslim services. Any evidence of his past crimes or his disciplinary record would be an attempt to undercut his conviction in his religious beliefs and his right to exercise those beliefs in prison. Such evidence will only mislead the jury, especially where Defendants cannot demonstrate that Mr. Alli's conduct was actually taken into account when denying him access to Jummah services.

Defendants must prove that the denial of Mr. Alli's right to attend congregate religious services "has a valid, rational connection to a legitimate governmental objective." Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006). MHAUII did not offer Jummah services in spite of the fact that such services are a central part of the Muslim faith. For reasons undocumented and unexplained, MHAUII turned a blind eye to Mr. Alli's requests for Muslim congregate services. Evidence of Mr. Alli's criminal history or conduct in prison does not account for this blanket foreclosure, especially

9

considering that Defendants have produced no documents showing that Mr. Alli's prior acts played *any* role in them denying Mr. Alli Jummah services.  Given the long-term and systematic denial of Jummah services and the irrevocable damage that would be done to Mr. Alli's religious convictions, evidence of Mr. Alli's criminal history and disciplinary record should be excluded because it would be unfairly prejudicial and would only confuse the issue and mislead the jury.

C.  **The Other Bad Acts Evidence is For an Improper Purpose**

Evidence of other crimes, wrongs, or acts may not be used to demonstrate propensity to commit other acts.  See  United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011).  The City of New York Municipal Laws provide that an inmate's exercise of his religious beliefs can only be limited when a determination is made "based on specific acts committed by the prisoner *during* the exercise of his or her religion that demonstrate a serious and immediate threat to the safety and security of the facility."  Chapter 1 of Title 40 of the Rules of the City of New York, § 1-07(j)(2) (emphasis added).  Here, Mr. Alli was never afforded an opportunity to attend Jummah services while in MHAUII.  Accordingly, Defendants cannot show that Mr. Alli committed any specific bad acts *during* Jummah services.  To that end, Defendants' attempt to admit evidence of other crimes, wrongs, or acts, which were committed at some *other* time, to suggest that Mr. Alli was likely to commit other bad acts *if* he was given the opportunity to attend Jummah services, is improper.  Prior convictions and any disciplinary actions in prison unrelated to attending religious services, therefore, should be excluded as improper and highly prejudicial propensity evidence that is likely to confuse the issues and mislead the jury.

Moreover, following the "inclusionary" approach to evidence of other crimes, wrongs, or acts, it is clear that evidence of Mr. Alli's other crimes, wrongs or acts is for the sole purpose of showing Mr. Alli's bad character. See United States v. Carlton, 524 F.3d 97, 101 (2d Cir. 2008). This evidence is not admitted for a proper purpose such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Fed. R. Evid. 404(b). Rather, Defendants would admit such evidence to show that Mr. Alli would be a security threat at Jummah services, even though Defendants have not and cannot produce any documents showing that to be true. Prisoners, however, "retain[] those First Amendment rights that are not inconsistent with . . . legitimate penological objectives." Shakur v. Selsky, 391 F.3d 106, 113 (2d Cir. 2004).

As the City of New York municipal law recognizes, congregate services for recognized religions are a baseline religious right that prisoners retain. Any infringement upon such religious exercise should be made specifically with regard to conduct during that religious exercise, which Defendants failed to do here. Therefore, the Court should exclude any evidence of prior convictions or prior bad acts from Defendants' case in chief because Defendants are unable to demonstrate that an individualized security assessment was made specifically with respect to Mr. Alli's attendance at Jummah services.

## II.   Evidence of Prior Convictions Should be Excluded for Impeachment Purposes

In addition to excluding evidence of Mr. Alli's alleged prior bad acts and criminal history in Defendants' case in chief, Defendants should also be precluded from using Mr. Alli's prior convictions for impeachment.

11

Rule 609 of the Federal Rules of Evidence provides for the use of prior criminal convictions for impeachment purposes.  See Fed. R. Evid. 609.  Such evidence may be used to attack a witness's character for truthfulness.  See id. at (a)(1).  For felony crimes, the probative value of such evidence must, however, outweigh the danger of unfair prejudice.  See id.  In addition, evidence of convictions for any crime is properly admitted to impeach a witness's character for truthfulness where the crime involved an act of dishonesty or a false statement by the witness.  See id. at (a)(2).  Here, the probative value of Mr. Alli's prior convictions is outweighed by the danger of unfair prejudice.

Mr. Alli pled guilty to two weapons possession charges.  The probative value of the weapons charges themselves is outweighed by the danger of unfair prejudice because the issues in the present civil case revolve around Mr. Alli's right to congregate religious services while in prison and the weapons charges have no bearing on Mr. Alli's character for truthfulness.  Defendants should be prevented from using the weapons convictions to attack Mr. Alli's character when the focus here is upon Mr. Alli's religious rights while in prison, not what led Mr. Alli to prison.  To allow the evidence would be to unfairly characterize Mr. Alli as having a propensity to cause trouble.  Meanwhile, nothing in the record demonstrates that Mr. Alli caused any problems during the Jummah services that he attended in other facilities, or at MHAUII when Jummah services were finally permitted after Mr. Alli filed his Amended Complaint.

Even if the prior convictions are admitted into evidence for impeachment purposes, Defendants should be prevented from inquiring into the specific instances of the arrests and convictions.  A court may, in its discretion, permit on cross-examination inquiry into specific instances of conduct that are probative of a witness's character for

truthfulness or untruthfulness.  See Fed. R. Evid. 608(b).  The Court has broad discretion to determine the scope and extent of cross-examination.  Jova v. Smith, 582 F.3d at 415.  Accordingly, the Court should limit the introduction of any prior conviction to evidence of the conviction only, and exclude evidence concerning the specific instances of the convictions, which are entirely irrelevant.  The specific instances of Mr. Alli' prior weapons possession convictions have no probative value, are likely to be highly prejudicial and will distract the jury from the underlying issue in the case – whether Mr. Alli was wrongly precluded from attending Jummah services and receiving Halal meals.  The Court should therefore exclude cross-examination testimony on the specific instances of conduct surrounding Mr. Alli's convictions.

## CONCLUSION

For the reasons stated above, Mr. Alli respectfully requests that the Court exclude certain evidence from introduction at trial

Dated:  March 29, 2012

                Respectfully submitted,

                VINSON & ELKINS L.L.P.


           By: /s/ Michael V. Rella
              Michael V. Rella
              666 Fifth Avenue, 26th Floor
              New York, New York 10103
              Tel: (212) 237-0000
              Fax: (212) 237-0100
              mrella@velaw.com

              *Pro Bono Counsel for Plaintiff*
              *Umar Alli*